**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| DAVID J. VOACOLO | ) | |
| 44 Elkton Street | ) | |
| Hamilton, New Jersey 08619, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION | ) | |
| 3900 Wisconsin Avenue, NW | ) | |
| Washington, DC 20016-2892, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FEDERAL HOUSING FINANCE AUTHORITY | ) | |
| 1700 G Street, NW, 4th Floor | ) | |
| Washington, DC 20552, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY | ) | |
| 1500 Pennsylvania Avenue, NW | ) | |
| Washington DC 20220, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

The complaint of the plaintiff, David J. Voacolo, respectfully shows and alleges as follows:

1.     This is an action under the Administrative Procedure Act, 5 U.S.C. §§ 701 – 706

("APA"), and the Housing and Economic Recovery Act of 2008, 12 U.S.C. §§ 1455, 1719, 4617

("HERA"), which arises out of the purchase by Plaintiff David J. Voacolo ("Plaintiff" or "Voacolo") of sixty-four thousand shares (64,000) of stock (the "Shares") in Defendant Federal National Mortgage Association ("Fannie Mae") during August of 2009, after Fannie Mae had been placed under the conservatorship of Defendant Federal Housing Finance Authority ("FHFA").

2.      Under HERA, FHFA became the Conservator of Fannie Mae, following the execution of the Amended and Restated Senior Preferred Stock Purchase Agreement (the "Purchase Agreement" or "SPSPA") on September 26, 2008. *See* Purchase Agreement, *available at* http://www.fhfa.gov/Conservatorship/Documents/Senior-Preferred-Stock-Agree/2008-9-26_SPSPA_FannieMae_RestatedAgreement_N508.pdf (last accessed June 26, 2016).

3.      Plaintiff purchased the Shares on the basis of statements made by FHFA that the conservatorship would terminate promptly upon a determination that the FHFA's plan as Conservator had successfully restored Fannie Mae to a safe and solvent condition.

4.      Approximately three years after Voacolo's purchase, in August of 2012, Fannie Mae had regained solvency, and was again making profits.

5.      Shortly after the announcement regarding Fannie Mae's profitability was made, on August 17, 2012, Defendant United States Department of the Treasury ("Treasury" or "U.S. Treasury"), acting through Defendant FHFA, executed the Third Amendment to the Purchase Agreement (the "Third Amendment"). *See* Third Amendment, *available at* https://www.treasury.gov/press-center/press-releases/Documents/Fannie.Mae.Amendement.pdf (ast accessed June 26, 2016).

6.      Under the terms of the Third Amendment, Plaintiff has been deprived of dividend payments from and of the value of the Shares, without just compensation therefor, in violation of

the terms of the Purchase Agreement in effect at the time of Voacolo's purchase of the Shares; and

without the due process required by the Fifth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

7.      This action arises under the APA, 5 U.S.C. §§ 701–706, and HERA, 12 U.S.C. §§ 1455, 1719, 4617. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

8.      Jurisdiction and venue in this Court are also proper pursuant to Section 6.4 of the Purchase Agreement.

9.      Plaintiff has standing to file this complaint. Plaintiff is a good-faith purchaser for value of the Shares, purchased after Fannie Mae entered conservatorship, and purchased on the basis of statements made by Defendants.

## PARTIES

10.      Plaintiff David J. Voacolo, is a resident of the State of New Jersey.  Plaintiff resides at 44 Elkton Street, Hamilton, New Jersey 08619.

11.      Defendant Federal National Mortgage Association ("Fannie Mae") is a federally-chartered corporation that has its principal place of business at 3900 Wisconsin Avenue, NW, Washington, DC 20016-2892, with multiple regional offices around the United States of America.

12.      Defendant Federal Housing Finance Authority ("FHFA") is an agency or instrumentality of the United States, with its headquarters at 1700 G Street, NW, 4th Floor, Washington, DC 20552, and is the appointed Conservator of Defendant Fannie.

13.      Defendant United States Department of the Treasury ("Treasury" or "U.S. Treasury") is an agency or instrumentality of the United States, having its headquarters at 1500 Pennsylvania Avenue, NW, Washington, DC 20220, and it is the purchaser, pursuant to 79.9% of

the common stock of Fannie Mae on a fully-diluted basis pursuant to a September 7, 2008 Purchase

Agreement and amendments thereto.

## FACTUAL ALLEGATIONS

14.     Due to what has become known as the Housing Crisis (or Economic Crisis),

Fannie Mae was not solvent in September 2008.

15.     Pursuant to federal legislation, on September 7, 2008, the FHFA became Fannie

Mae's conservator, and published a statement on its website that, "[u]pon the Director's

determination that the Conservator's plan to restore the Company to a safe and solvent condition

has been completed successfully, the Director will issue an order terminating the conservatorship."

*See* Federal Housing Finance Agency, "FAQs: Questions and Answers on Conservatorship,"

September 7, 2008, *available at* http://www.fhfa.gov/Media/PublicAffairs/Pages/Fact-Sheet-

Questions-and-Answers-on-Conservatorship.aspx (accessed on June 14, 2016).

16.     On or about September 26, 2008, the U.S. Treasury and Defendant Fannie Mae

entered a Senior Preferred Stock Purchase Agreement ("SPSPA" or "Purchase Agreement"),

under which the U.S. Treasury would provide billions of dollars to Defendant Freddie Mac in

exchange for 10% dividends and the right to purchase 79.9% of Fannie Mae's stock. *See*

Restated and Amended Purchase Agreement,

17.     In August of 2009, Plaintiff, relying on statements by the Defendants that the

conservatorship would terminate once the Companies became solvent again, purchased 64,000

shares of Defendant Fannie Mae's stock at the rate of seventy-seven cents per share

($0.77/share).

18.     Plaintiff subsequently sold 14,000 of these shares, but continues to own the

remaining 50,000 Shares.

19.     On August 9, 2012, Susan McFarland, then the Chief Financial Officer of

Defendant Fannie Mae, informed the United States Treasury that Defendant Fannie Mae's

financial condition had improved to the point that it was again making profits.

20.     Approximately one week later, on August 17, 2012, Defendants Fannie Mae and

the Treasury entered the Third Amendment to Amended and Restated Senior Preferred Stock

Purchase Agreement (the "Third Amendment"). *See* Third Amendment, *available at*

21.     Pursuant to the terms of the Third Amendment, Defendant Fannie Mae has been

paying 100% of its profits to the United States Treasury.

22.     But for the Third Amendment, Plaintiff would have been entitled to a portion of

the benefit of those profits in proportion to his Shares.

23.     Plaintiff, through his attorneys, sent Defendant Fannie Mae several legal notices

regarding this deprivation to no avail.

24.     Plaintiff had no involvement in the entering of the Third Amendment, nor had he

had an opportunity to have his objection heard.

25.     Upon information and belief, the United States always intended that the taxpayers

would reap a profit from the Treasury's investment in Defendant Fannie Mae. *See* Letter from

Randall DeValk to Charles E. Grassley, Chairman of the Committee on the Judiciary, *available*

*at* http://online.wsj.com/public/resources/documents/GrassleyResponse04212015.pdf (Treasury

conceded that it "did not make a simple 'loan' to Fannie and Freddie…The terms of the

preferred stock agreements are intended to compensate Treasury and the taxpayers…not to pay

back a one-time loan…Any private lender would demand substantial compensation." *Id.* at 3)

(last accessed June 26, 2016); *see also* Federal Housing Finance Agency: Office of Inspector

General, "White Paper:  FHFA-OIG's Current Assessment of FHFA's Conservatorships of

Fannie Mae and Freddie Mac," at 31 (March 28, 2012) (referring to bailout of Fannie Mae as "Treasury's outstanding investment."), *available at* http://www.fhfaoig.gov/Content/Files/WPR-2012-001.pdf (last accessed June 26, 2016).

26.     Therefore, statements made by Defendants to the effect that the conservatorship would end once Fannie Mae was deemed solvent were made with the knowledge that the conservatorship would, in reality, continue until such time as Defendant U.S. Treasury deems taxpayers to have received a "sufficient return" on their "investment."

27.     Upon information and belief, these misstatements were made in order to encourage potential shareholders, such as Plaintiff had been at the time, and reassure them that they could expect to profit from an investment in Defendant Fannie Mae.

## **COUNT I**

28.     Plaintiff hereby repeats, re-alleges, and reincorporates by reference paragraphs 1 – 27, as if set forth in full herein.

29.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

30.     But for the operation of the Third Amendment, Plaintiff's 50,000 Shares would now be valued at approximately $ 35 (thirty-five dollars) per share, for a total of $ 1,750,000.00 (1.75 million dollars).

31.     Accordingly, the Third Amendment deprives Plaintiff of what his shares would otherwise be worth, and he has therefore been deprived of his property.

32.     Upon information and belief, it was not a coincidence that, approximately one week after the Treasury was informed that the Companies were again making profits, Defendants arranged to have 100% of those profits paid to the Treasury.

33.     Plaintiff had no opportunity to voice objections or otherwise be heard prior to the execution of the Third Amendment.

34.     The Third Amendment to the SPSPA therefore violated Plaintiff's Due Process rights under the Fifth Amendment to the U.S. Constitution and constituted an illegal exaction.

35.     Accordingly, Defendants actions were arbitrary, capricious, or otherwise not in accordance with the law.

36.     All conditions precedent to the filing of this suit have occurred or have been performed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays the Court for relief and judgment as follows:

A.     Hold that Defendants' actions in executing and implementing the Third Amendment were arbitrary, capricious, or otherwise not in accordance with the law;

B.     Award Plaintiff monetary relief in the sum of $2,500,000;

C.     Award to Plaintiff his litigation expenses, including reasonable attorney fees, costs, and expert witness fees; and

D.     Award such other relief as the Court finds to be just and proper.


                                        Respectfully Submitted,


Dated:  June 26, 2016                   /s/ Alexander J. E. English
                                        Alexander J. E. English, Esq.
                                        D.C. Dist. Ct. Bar #: MD0005


7

*Counsel of Record*
9980 Guilford Rd., No. 102
Jessup, MD 20794
301-466-4024
alexander.j.e.english@gmail.com

*Of Counsel*
Afia SenGupta, Esq.
Angela Lipsman, Esq.
Brus Chambers LLC
1325 Avenue of Americas, 27th Fl.
New York, NY 10019
202-714-6855
afia.sengupta@bruschambers.us
bruschambers.ang@gmail.com
*Attorneys for Plaintiff*